Paul Hansmeier (MN Bar #387795)
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org

*In Propria Persona*

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL HANSMEIER,<br><br>　　　Movant - Appellant,<br><br>v.<br><br>JOHN DOE,<br><br>　　　Defendant - Appellee. | No. 13-55859<br><br>D.C. No. 2:12-cv-08333-ODW-JC<br>U.S. District Court for the Central<br>District of California, Los Angeles<br><br>――――――――――<br><br>**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**<br><br>――――――――――<br><br>**APPELLANT PAUL HANSMEIER'S EMERGENCY MOTION FOR STAY PENDING APPEAL** |

## NINTH CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to 9th Cir. R. 27-3, Appellant respectfully certifies that his motion for a stay pending appeal is an emergency motion requiring "relief … in less than 21 days" to "avoid irreparable harm."

### A.     Nature of the Emergency

Appellant Paul Hansmeier is a non-party attorney who resides in Minnesota, who did not enter an appearance in the case below but was nevertheless commanded to appear before the district court in Los Angeles under the threat of contempt, for proceedings contemplating criminal sanctions against him. (Dkt. No. 86 (amending and incorporating by reference Dkt. No. 48).) The district court failed to afford Appellant even the most basic due process protections such as the ability to cross-examine adverse witnesses or to object to the introduction of improper evidence against him, let alone the strict due process protections that would be available in a criminal contempt proceeding. *See F.J. Hanshaw Enters., Inc. v. Emerald River Develop., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001) (applying strict due process protections to the imposition of "substantial punitive sanctions" under a court's inherent powers). Nevertheless, on May 6, 2013, the district court entered an order issuing sanctions against plaintiff corporations AF Holdings and Ingenuity13, against their attorney Brett Gibbs, against non-party and non-appearing attorneys John Steele and Paul Duffy, and against the Appellant. (Dkt. No. 130.)

The sanctions levied against the Appellant included (1) an award of attorneys' fees and costs totaling $40,659.86, which Appellant was ordered to pay jointly and severally with the other sanctioned persons and entities; (2) a punitive doubling of the foregoing award of attorneys' fees and costs—bringing the total monetary sanctions to $81,319.72—which Appellant was again ordered to pay jointly and severally; (3) referrals to state and federal bar organizations and disciplinary committees; (4) referral to the United States Attorney for the Central District of California; (5) referral to the Criminal Investigative Division of the Internal Revenue Service; and (6) notification of "all judges before whom these attorneys have pending cases." (Dkt. No. 130, at 10–11.)

The monetary sanctions (1 & 2) were ordered paid within fourteen days (by May 21, 2013). (*Id.*) Similarly, with regard to the notification in pending cases and bar and disciplinary referrals (3 & 6) the Court requested attorney Morgan Pietz "to assist by filing a report, within 14 days, containing contact information… ." (*Id.* at 11.) In the meantime, the district court's order, containing numerous pop-culture references to *Star Trek*, has already garnered widespread and ongoing nationwide mass-media attention.

It is imperative that a stay pending appeal be entered on or before May 21, 2013 to avoid the irreparable reputational injury that would flow from the dissemination of the district court's order to "all judges before whom these attorneys have pending cases." (*Id.*) "[O]ne's professional reputation is a lawyer's most

important and valuable asset." *Walker v. City of Mesquite, Texas*, 129 F.3d 831, 832 (5th Cir. 1997) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 412 (1990) (Stevens, J., concurring in part)). The impending actions of the district court threaten to damage Appellant's reputation in the legal community, in turn damaging his ability to attract clients and to represent them effectively, in a manner that will be irremediable through the normal appellate process without a stay of execution. Such actions also threaten to prejudice the outcome of numerous disparate and unrelated cases where Appellant is appearing as either counsel or litigant.

### B.    Proceedings in the District Court

Appellant did not petition the district court for a stay prior to making this emergency motion because it would have been impracticable to do so for at least three independent reasons:

*First*, there is a very short timeframe during which irreparable reputational and professional injury to Appellant stemming from the district court's order may be prevented. The district court has already begun implementing sanctions 3–6, immediately upon issuing its order. The fourteen day delay for the district court to receive a report of contact information for sanctions 3 & 6 is merely "[f]or the sake of completeness," and thus irreparable reputational damage may be inflicted via notifications to judges in other pending cases at any time. (*See* Dkt. No. 130, at 11.) In addition, the district court's order has garnered mass media publicity due to its conspicuous use of numerous pop-culture references to *Star Trek*. (*See generally id.*)

Such attention-getting drafting—in an otherwise-serious order that adjudges Appellant guilty of "moral turpitude" among other things (*Id.* at 10)—is further inflicting reputational damage in its own regard, on an immediate and ongoing basis, in a way that will be irremediable unless this Court acts decisively to stay the order pending review.

*Second*, the district judge has prejudged the issues such that petitioning the district court for a stay would be futile. When a district court's order demonstrates commitment to a particular resolution, application for a stay from that same district court may be deemed futile and hence impracticable. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996); *see also, e.g., Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982). Here, the district court has demonstrated a commitment to the swift imposition of sanctions against Appellant. The district court initiated sanctions after the underlying litigation had been dismissed, yet encouraged a defense attorney from the underlying litigation to act as an interested and highly partial prosecutor. (*See* Dkt. No. 130, at 7, 10.) When Appellant asked the district court to withdraw its order requiring him and others to appear on five day's notice from across the nation, the district court wrote that his *ex parte* request, filed in paper pursuant to the local rules and filed a mere day after Appellant had been served with the order, "exemplifies gamesmanship" due to its "eleventh-hour filing." (Dkt. No. 86, at 1; referencing Dkt. Nos. 81–85.) At a later hearing, the district court stated "I want to know if some of my conjecture is accurate," and that "I am not a [sic] looking for

legal arguments." Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 8:24–25, 10:13 (attached hereto as Exhibit B). And in its order, the district court made sweeping conclusions which go far beyond the facts of the case, implying that the underlying litigation would have been sanctionable regardless of Appellant's conduct: "It is simply not economically viable to *properly* prosecute the illegal download of a single copyrighted video." (Dkt. No. 130, at 6 (emphasis in original).) The district court further drew improper inferences from Appellant's refusal to testify against himself, despite imposing criminal punitive sanctions. (*Id.* at 3, 10.) Applying to the district court for a stay pending appeal would be futile since the proceedings below demonstrate a commitment to the imposition of sanctions and reputational injury upon Appellant, regardless of the due process protections that should be afforded to him.

*Third*, the district court's order imposing sanctions is explicitly drafted to evade meaningful appellate review. This may also be seen as an enhanced sign that the district court has prejudged the issues, discussed above. Where a "district judge's intent to evade appellate review is plain from the record," and when "a district judge's actions might serve to deprive the appellate court of meaningful review," this Court should exercise its authority to aid its own appellate jurisdiction. *Townley v. Miller*, 693 F.3d 1041, 1043, 1045 (9th Cir. 2012). Here, the district court directly stated that its punitive monetary sanctions—imposed under its inherent authority without the due process required by this Court—were "**calculated to be just below the cost of an**

**effective appeal**." (Dkt. No. 130, at 10 n.5.) Because the district court has clearly stated that its punitive sanctions were "calculated" so as to prevent or dissuade Appellant from seeking effective appellate review, this Court should exercise its authority to consider the emergency stay of execution pending appeal requested in this motion. Requiring Appellant to make this request first to the district court, despite the district court's explicit statement that it intended to prevent an effective appeal, would be futile and would only worsen the immediate and ongoing irreparable harm threatened by the sanctions order.

### C.    Notification of Counsel

Before filing this motion, Appellant notified counsel for the other parties by e-mail and also e-mailed them a service copy of the motion and exhibits.

Pursuant to 9th Cir. R. 27-3(a)(3)(i), the telephone numbers, e-mail addresses, and office addresses of the Appellant, appearing *in propria persona* on appeal, and of the other parties are as follows:

**Appellant, Paul Hansmeier**
*In Propria Persona*
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org

**Ingenuity13, LLC**
*Represented by*
Brett L. Gibbs, Esq.
Of Counsel to Prenda Law Inc.
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

**Non-Party Putative John Doe**
*Represented by*
Morgan Pietz (SBN 260629)
The Pietz Law Firm
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557


DATED: May 16, 2013

s/ Paul Hansmeier
*in propria persona*

# TABLE OF CONTENTS

NINTH CIRCUIT RULE 27-3 CERTIFICATE.................................................i

    A.    Nature of the Emergency...........................................................i

    B.    Proceedings in the District Court ..................................... iii

    C.    Notification of Counsel.............................................. vi

TABLE OF CONTENTS....................................................viii

TABLE OF AUTHORITIES ..........................................................ix

MOTION FOR STAY PENDING APPEAL.................................1

Statement of the Case ....................................................... 1

    A.    The Copyright Infringement Action................................. 1

    B.    The Order to Show Cause Proceeding Against Attorney of Record Brett Gibbs ....................................................... 2

    C.    The Subsequent Order to Show Cause Proceeding Against Appellant ........ 5

Argument........................................................................ 7

I.    Appellant Has a Strong Likelihood of Success on the Merits.............................. 7

    A.    The District Court Contravened Binding Supreme Court and Ninth Circuit Precedent by Appointing an Interested Special Prosecutor ........... 10

    B.    The District Court Contravened Binding Supreme Court and Ninth Circuit Precedent by Drawing Negative Inferences From the Appellant's Invocation of His Fifth Amendment Privilege Against Compelled Testimony. ................................................. 14

II.    Irreparable Harm Is Certain in the Absence of a Stay ......................... 16

III.    A Stay of Execution Pending Appeal Will Not Injure the Other Parties.......... 18

IV.    The Public Interest Weighs in Favor of a Stay....................................... 18

CONCLUSION ................................................................19

CERTIFICATE OF SERVICE ...................................................20

# TABLE OF AUTHORITIES

## Cases

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ........................................................ 15

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ................................ iii, 16

*F.J. Hanshaw Enters., Inc. v. Emerald River Develop., Inc.*, 244 F.3d 1128 (9th Cir. 2001) ........................................................................................ i, 9, 16

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983) .......................... 9

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ........................................................................................ 19

*Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979) .................................... 19

*Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) ........................................................................................ 7, 18

*Griffin v. California*, 380 U.S. 609 (1965) .................................................. 14, 15

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ........................................................ 7

*In re DeVille*, 361 F.3d 539 (9th Cir. 2004) ...................................................... 9

*Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821 (1994) ................ 8

*McClendon v. City of Albuquerque*, 79 F.3d 1014 (10th Cir. 1996) ................ iv

*Penfield Co. of California v. SEC*, 330 U.S. 585 (1947) .................................... 9

*Primus Automotive Fin. Servs. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) .............. 19

*Regents of Univ. of Cal. v. Am. Broadcasting Cos.*, 747 F.2d 511 (9th Cir. 1984) ........................................................................................ 17

*Rent-A-Center v. Canyon Television & Appliance*, 944 F.2d 597 (9th Cir. 1991) ........................................................................................ 17

*Schwartz v. Covington*, 341 F.2d 537 (9th Cir. 1965)............................................ 17

*Slochower v. Board of Higher Education*, 350 U.S. 551 (1956)......................... 15, 16

*Townley v. Miller*, 693 F.3d 1041 (9th Cir. 2012)............................................ v

*U.S. v. Talao*, 222 F.3d 1133 (9th Cir. 2000) ................................................ 16

*Ullmann v. United States*, 350 U.S. 422 (1956) ............................................ 15

*Walker v. City of Mesquite, Texas*, 129 F.3d 831 (5th Cir. 1997) ................... iii, 16

*Walker v. Lockhart*, 678 F.2d 68 (8th Cir. 1982)........................................... iv

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365 (2008) ................... 7

*Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787 (1987) .......... 8, 10, 11, 12

## Other Authorities

Andrew L. Kaufman, *Judicial Ethics: The Less-Often Asked Questions*, 64
    Wash. L. Rev. 851 (1989) ............................................................ 16

## Rules

9th Cir. R. 27-3.................................................................................... i

9th Cir. R. 27-3(a)(3)(i)..................................................................... vi

Fed. R. App. Proc. 8(a)(2)................................................................. 1

Fed. R. Civ. Proc. 11 ........................................................................ 2

Fed. R. Civ. Proc. 41(a)(1) ............................................................... 2

## MOTION FOR STAY PENDING APPEAL

Pursuant to Fed. R. App. Proc. 8(a)(2), Appellant respectfully seeks a stay of the Order Issuing Sanctions entered by the U.S. District Court for the Central District of California, No. 2:12-cv-08333-ODW-JC (C.D. Cal. May 6, 2013), Dkt. No. 130 (hereinafter "Sanctions Order") (attached hereto as Exhibit A), pending resolution of his appeal of that order.

### Statement of the Case

The action below consisted of three separate proceedings: (1) a copyright infringement action; (2) a post-dismissal order to show cause proceeding against attorney of record Brett Gibbs; and (3) a subsequent order to show cause proceeding against non-party John Steele, non-party Paul Hansmeier, non-party Paul Duffy, non-party paralegal Angela Van Den Hemel, non-party non-attorney Mark Lutz, non-party non-attorney Alan Cooper, non-party technician Peter Hansmeier, non-party Prenda Law, Inc., non-party Livewire Holdings LLC, non-party Steele Hansmeier PLLC (a law firm that was formally dissolved in 2011), consolidated plaintiff AF Holdings LLC, plaintiff Ingenuity13 LLC and non-party 6881 Forensics, LLC.

### A.     The Copyright Infringement Action

On September 27, 2012, Plaintiff Ingenuity13, LLC filed a lawsuit in the U.S. District Court for the Central District of California alleging copyright infringement, contributory infringement and negligence against an unidentified Internet user, John

Doe. (Dkt. No. 1.) Shortly thereafter, Ingenuity13 sought (Dkt. No. 8), and was granted (Dkt. No. 9), leave to issue a subpoena to John Doe's Internet Service Provider in order to discover John Doe's identity. On December 19, 2012, the case was reassigned to Judge Wright. (Dkt. No. 24.) The next day, the district court vacated an earlier discovery order granting Ingenuity13 leave to identify the John Doe defendant and ordered Ingenuity13 to show cause for why it should be allowed to proceed in discovering John Doe's identity. (Dkt.No. 28.) The Court described its "duty to protect the innocent citizens of this district from this sort of legal shakedown, even though a copyright holder's rights may be infringed by a few deviants." (*Id.* at 2.) On December 31, 2012, Ingenuity13 filed a motion to disqualify the district court, arguing that the district court's gratuitous comments regarding plaintiffs in this and similar actions would give a reasonable observer reason to question the district court's impartiality in these actions. (Dkt. No. 35.) This motion was denied. (Dkt. No. 41.) On January 28, 2013, Ingenuity13 voluntarily dismissed the action in its entirety without prejudice pursuant to Fed. R. Civ. Proc. 41(a)(1). (Dkt. No. 43.)

### B.    The Order to Show Cause Proceeding Against Attorney of Record Brett Gibbs

On February 7, 2013, the district court ordered Ingenuity13's attorney of record, Brett Gibbs, to show cause why he should not be sanctioned for violations of Fed. R. Civ. Proc. 11 and Central District of California Local Rule 83-3. (Dkt. No.

48.) Identical orders were entered in four other copyright infringement actions consolidated before the district court, including infringement actions filed by copyright holder AF Holdings, LLC. The district court identified three types of sanctionable conduct: (1) violating orders instructing AF Holdings to cease its discovery efforts based on information obtained through any earlier-issued subpoenas; (2) failing to conduct reasonable inquiries before filing John Doe copyright infringement cases and naming Benjamin Wagar and Mayon Denton as defendants; and (3) in *Ingenuity13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012), perpetrating fraud on the court by misappropriating the identity of Alan Cooper and filing lawsuits based on an invalid assignment agreement. (*Id.* at 9–10.)

The district court scheduled a March 11, 2013 hearing, and indicated that it would "determine the proper punishment" for Mr. Gibbs, which "may include a monetary fine, incarceration, or other sanctions sufficient to deter future misconduct." (*Id.* at 10–11.) In addition, "based on the unusual circumstances of [the] case," the district court appointed Morgan Pietz, attorney for the putative John Doe defendant in the underlying action, to the hearing "to present evidence concerning the conduct outlined in [the] order." (*Id.* at 10.) Gibbs filed a brief in response to the order to show cause in which he defended his conduct by, *inter alia*, explaining that he was receiving guidance from "senior members" of Prenda Law, a law firm which he was Of Counsel to in the underlying action. The Court ordered Gibbs to identify the

"senior members" referenced in his brief (Dkt. No. 57), and Gibbs responded by identifying Appellant Hansmeier and attorney John Steele. (Dkt. No. 58.) On March 5, 2013, the Court ordered Appellant Hansmeier (a Minnesota attorney), Florida resident Steele, Illinois attorney Paul Duffy, Minnesota paralegal Angela Van Den Hemel, Florida resident Mark Lutz, Alan Cooper of AF Holdings LLC, Minnesota technician Peter Hansmeier, and Alan Cooper of Isle, MN "to appear on March 11, 2013, at 1:30 p.m."—six days after issuance. (Dkt. No. 66.) The order did not specify for what purpose the individuals were ordered to appear. (*See id.*)

After becoming aware of the order on March 7, 2013, Appellant retained counsel and on the next day filed, in conjunction with others similarly positioned, an *ex parte* motion for the court to withdraw its order to appear. (Dkt. No. 81.) Appellant objected to, *inter alia*, the court's exercise of nationwide personal jurisdiction and to the "fundamentally unreasonable" notice. (Dkt. No. 82, at 2–3.) The district court did not rule on this motion prior to the hearing. Appellant appeared through counsel at the March 11, 2013, hearing and made himself available to testify via telephone. *See* Transcript, Mar. 11, 2013 Hearing on Order to Show Cause, at 2, 5:10–7:3 (attached hereto as Exhibit C). The district court rebuffed Appellant's counsel's attempt to participate in the hearings, instructing her to "have a seat." *Id.* at 7:1–3. Appellant's counsel was not allowed to cross-examine witnesses, object to evidence or make arguments at the hearing. *See generally id.* After the hearing, Appellant's *ex parte* motion was rejected by the district court, which found there was "specific jurisdiction over

these persons because of their pecuniary interest and active, albeit clandestine participation in these cases." (Dkt. No. 86, at 1.) The district court further remarked that movants' "eleventh-hour filing exemplifi[ed] gamesmanship." (*Id.*)

## C.     The Subsequent Order to Show Cause Proceeding Against Appellant

On March 14, 2013, the district court amended its order to show cause. (Dkt. No. 86, at 2 (amending Dkt. No. 48).) This time, the order included possible sanctions against non-party John Steele, non-party Paul Hansmeier, non-party Paul Duffy, non-party paralegal Angela Van Den Hemel, non-party non-attorney Mark Lutz, non-party non-attorney Alan Cooper, non-party technician Peter Hansmeier, non-party Prenda Law, Inc., non-party Livewire Holdings LLC, non-party Steele Hansmeier PLLC (a law firm that was formally dissolved in 2011), consolidated plaintiff AF Holdings LLC, plaintiff Ingenuity13 LLC and non-party 6881 Forensics, LLC. (*Id.*) The district court further amended the order to show cause to identify five additional forms of sanctionable conduct by these thirteen persons and entities: (1) participation, direction and execution of the acts described in the district court's original order to show cause; (2) failing to notify the district court of all parties that have a financial interest in the outcome of the litigation; (3) defrauding the district court by misrepresenting the nature and relationship of the individuals and entities ordered to appear; (4) Steele and Appellant Hansmeier's failure to make a *pro hac* appearance before the district court; and (5) for failing to appear in person at the March 11, 2013 order to show cause hearing against Gibbs. (*Id.* at 2–3.) Once again, the district court invited putative John

Doe's attorney Morgan Pietz and his co-counsel Nicholas Ranallo to appear at the hearing.

Appellant appeared before the district court in Los Angeles at the order to show cause hearing on April 2, 2013. Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 4:19–25 (attached hereto as Exhibit B). There, the district court indicated its desire to receive testimony from Appellant Hansmeier, Steele, and Duffy. *Id.* at 6:19–22. In light of the seriousness of the proposed criminal and/or punitive sanctions against them, each of these individuals invoked their Fifth Amendment privilege against compelled testimony. *Id.* at 7:5–9:20. After learning of this posture, the district court rebuffed counsel's attempt to present arguments and abruptly ended the hearing. *See id.* at 10–13. No testimony, evidence, or argument was allowed or presented at the hearing, which lasted approximately 12 minutes. *See generally id.* Following the hearing, Appellant and other targets of the order to show cause submitted substantial briefing on the district court's procedural errors and failure to provide due process, and numerous evidentiary objections. (*See* Dkt. Nos. 108, 109, 110, 113, 120, 122, 123, 125, 126, 127, 128, 129.)

On May 6, 2013, the district court issued an order sanctioning Gibbs, Appellant Hansmeier, Steele, Duffy, Prenda Law, AF Holdings and Ingenuity13 with (1) an award of attorneys' fees and costs totaling $40,659.86, which Appellant was ordered to pay jointly and severally with the other sanctioned persons and entities; (2) a punitive doubling of the foregoing award of attorneys' fees and costs—bringing the

total monetary sanctions to $81,319.72—which Appellant was again ordered to pay jointly and severally; (3) referrals to state and federal bar organizations and disciplinary committees; (4) referral to the United States Attorney for the Central District of California; (5) referral to the Criminal Investigative Division of the Internal Revenue Service; and (6) notification of "all judges before whom these attorneys have pending cases." (Dkt. No. 130, at 10–11.) The district court did not rule on any of the evidentiary objections. (*See id.*)

**Argument**

The standard for a stay of execution pending appeal is the same as the standard for a preliminary injunction. In deciding whether to issue a stay pending appeal, this Court considers: (1) the appellant's likelihood of success on the merits; (2) the likelihood of irreparable harm absent a stay; (3) the likelihood of substantial injury to other parties if a stay is issued; and (4) the public interest. *E.g.*, *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1115–16 (9th Cir. 2008) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). As demonstrated below, each of these factors favors a stay of the district court's Sanctions Order.

## I.      Appellant Has a Strong Likelihood of Success on the Merits

The district court contravened binding Supreme Court and Ninth Circuit precedent by failing to utilize the procedures applicable in a criminal contempt

proceeding. In its orders to show cause,[1] the district court raised questions of fraud, potential incarceration and contempt. (Dkt. No. 86 (amending and incorporating by reference Dkt. No. 48).) Since these orders were entered after the dismissal of the underlying litigation, they necessarily invoked criminal contempt (punishment), rather than civil contempt (ensuring compliance). *See Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 826–30 (1994) (distinguishing criminal from civil contempt). Likewise, these orders cited out-of-court acts as potential bases for sanctions. (Dkt. No. 48, at 8–9 (citing investigation outside of formal discovery as failure to comply with discovery order, misappropriation of identity). This alone should have mandated the district court to apply the due process protections applicable to criminal proceedings. *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 798–99 (1987) ("The distinction between in-court and out-of-court contempts has been drawn … for the purpose of prescribing what procedures must attend the exercise of that authority.").

In addition, however, the proceedings resulted in a punitive sanction of $40,659.86—doubling an award of attorneys' fees—that was imposed pursuant to the district court's inherent power. (Dkt. No. 130, at 10.) Punitive sanctions issued pursuant to a court's inherent powers may only be imposed under procedures

---

[1] Court's February 7, 2013, Order to Show Cause re Sanctions for Rule 11 and Local Rule 83-3 Violations, at 11:1–4 (Dkt. No. 48); Court's Order of March 14, 2013, re the Ex Parte Application of John Steele, Paul Hansmeier, Paul Duffy, and Angela Van Den Hemel, at 1–3 (Dkt. No. 86).

comporting with those called for in a criminal contempt proceeding. *F.J. Hanshaw Enters., Inc. v. Emerald River Develop., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001); *see also In re DeVille*, 361 F.3d 539, 551 (9th Cir. 2004). Furthermore, under the review applicable for criminal contempt, a punitive sanction is not separable from other sanctions imposed by the order—like the attorneys' fee award itself—which might otherwise be identified as compensatory and civil:

> Where a judgment of contempt contains a mixture of criminal and civil elements, "the criminal aspect of the order fixes its character for purpose of review." Similarly, where the *fine* imposed is part compensation and part punishment, the criminal feature dominates and fixes its character for the purpose of review.

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778–79 (9th Cir. 1983) (quoting *Penfield Co. of California v. SEC*, 330 U.S. 585, 591 (1947)).

In *F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, this Court made clear that "the inherent potential for abuse and unfairness … mandates affording the accused party … the due process rights normally guaranteed to criminal defendants." 244 F.3d at 1139. These rights include notice of the charges, assistance of counsel, the opportunity to confront adverse witnesses, the opportunity to present a defense and call witnesses, an independent prosecutor, a jury trial, a presumption of innocence, the privilege against self-incrimination, and a standard of proof beyond a reasonable doubt. *Id.* at 1138–40.

The district court failed to grant the Appellant any of these due process protections. Indeed, the Appellant merely received an estimated twelve-minute hearing at which the district court berated Appellant and other persons named in its order to show cause and then brusquely rejected Appellant's counsel's attempt to present arguments. *See* Transcript, Apr. 2, 2013 Hearing on Order to Show Cause (attached hereto as Exhibit B). The district court's procedural errors and failures to provide Appellant with due process of law are too numerous and extensive to fully cover in this motion; Appellant therefore proceeds to detail here only the strongest examples of errors requiring reversal.

## A.     The District Court Contravened Binding Supreme Court and Ninth Circuit Precedent by Appointing an Interested Special Prosecutor

The failure of a district court to appoint a disinterested and independent prosecutor is "an error whose effects are pervasive. Such an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision." *Young*, 481 U.S. at 812 (1987). Because the effects of appointing an interested prosecutor are "fundamental and pervasive," the U.S. Supreme Court has established a categorical prohibition and held that "harmless-error analysis is inappropriate." *Id.* at 814. Thus, the appointment of an interested prosecutor necessarily invalidates the entirety of the proceedings as well as any resulting order or judgment. Because the district court here appointed the

interested attorney Morgan Pietz to prosecute Appellant's conduct, the entirety of the proceedings against Appellant must be reversed.

In its February 7, 2013 order to show cause against Gibbs, the court "invite[d]" attorney Morgan Pietz, counsel for an unnamed putative Doe defendant, "to present evidence concerning the conduct outlined in this order." (Dkt. No. 48.) And, indeed, Pietz did provide that "evidence," including the examination of witnesses, a video display of evidentiary and demonstrative exhibits, and the submission of multiple objectionable evidentiary exhibits into the record. *See, e.g.*, Transcript, Mar. 11, 2013 Hearing on Order to Show Cause, at 3, 57–59 (attached hereto as Exhibit C).

The district court thereafter invited Pietz to appear at the April 2, 2013 order to show cause hearing against Appellant. There, Pietz took his place with his co-counsel at the prosecutor's table, with several boxes of documents and the court's audio-visual equipment ready to levy against the Appellant. *See* Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 2, 4:9–12 (attached hereto as Exhibit B). Afterwards, the district court granted Pietz leave to file post-hearing submissions against the Appellant. (*E.g.*, Dkt. No. 111; Dkt. No. 116; Dkt. No. 117.)

However, Pietz was an interested prosecutor by definition. The U.S. Supreme Court has held that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." *Young*, 481 U.S. at 790, 809. "[S]uch an attorney is required by the very standards of the profession to serve two masters." *Id.* at 809. The putative John Doe

purportedly represented by Pietz was a beneficiary of the district court's orders vacating expedited discovery, substantially-similar versions of which were entered in each of the cases that the district court consolidated for the purpose of considering sanctions.[2] It was the alleged violations of these orders that served as one of the district court's two grounds for finding bad faith conduct by the Appellant. But the putative John Doe represented by Pietz benefited from these orders, because Plaintiff's infringement action could not proceed without expedited discovery. Thus, Pietz was by definition, "counsel for a party that is a beneficiary of a [allegedly violated] court order," and an improper interested prosecutor whose participation colored the entirety of the proceedings. *Young*, 481 U.S. at 790, 809, 812.

As outlined in objections by the Appellant and others accused below, Pietz is the antithesis of a disinterested prosecutor. A simple review of Pietz's website, "pietzlawfirm.com" reveals many links on the site associated with Appellants as well as many articles and blog posts with such titles as "A Primer on Slaying the Copyright Troll." (Dkt. No. 113, at 8.) For example, as to the litigation involving Ingenuity13, Pietz provided the following on his website:

> This summer, Prenda Law, Inc. and its attorneys John Steele and Brett Gibbs have been busy filing lawsuits in California on behalf of Ingenuity 13, LLC. Ingenuity 13 is

---

[2] On October 9, 2012, Magistrate Judge Walsh granted discovery into the identity of Pietz's purported client. (Dkt. No. 9.) On December 20, 2012, after the case was reassigned to Judge Wright and Pietz had appeared in the case on behalf of the putative John Doe defendant, the district court vacated the prior order granting discovery. (Dkt. No. 28.)

> the latest plaintiff that Prenda is using to orchestrate its
> national campaign to coerce copyright "settlements" from
> ISP subscribers who may or may not have actually
> downloaded any of plaintiff's movies…. If you have
> received a letter from your ISP regarding an Ingenuity 13
> subpoenas, or if you have been contacted by an Ingenuity
> 13 representative directly, please contact The Pietz Law
> Firm.

(*Id.*)  These statements speak for themselves. Pietz used the underlying proceeding as an advertisement for his business, and the district court advanced these efforts even after being put on notice of Pietz's interest in the litigation.

A disclosure in the declaration of Pietz in support of his motion for attorneys' fees provides further evidence of Pietz's interest in the litigation. Pietz advanced the costs for Alan Cooper, on whose testimony and declaration the district court heavily relied upon, to fly out to Los Angeles for the show cause hearing against Gibbs. (Dkt. No. 102-1, at 16 ("Exhibit D").) Pietz likewise and inexplicably advanced travel costs for Cooper's personal attorney, Paul Godfread.[3] (*Id.*) And Pietz failed to disclose these courtesies before examining Cooper.

Moreover, Cooper was but one of seven individuals the district court invited to appear at the order to show cause hearing against Gibbs—and Pietz did not offer to advance travel costs for any of the other witnesses. (Dkt. No. 113, at 6.)  If he was truly a disinterested prosecutor, then his obligation would have been to do everything

---

[3] Pietz sought and was granted an award against Appellant for the cost of flying Cooper's personal attorney to the order show cause hearing against Gibbs. (*See* Dkt. No. 130, at 10 (awarding $2,226.26 for Pietz's costs); Dkt. No. 102, at 4 (requesting $2,226.26 in costs, including advanced travel costs for Godfread and Cooper).)

possible to provide the district court with the information it needed to make its decisions. By independently selecting which one of the witnesses would appear, Pietz demonstrated actual bias. Despite being put on notice of these improprieties, the district court allowed Pietz to continue in his role as a special prosecutor.

Further, as noted in the putative John Doe's Request for Leave to File a Reply, Pietz argued that there was "an important issue in this case, with potentially far-reaching implications that go beyond Prenda, which is in danger of being overshadowed by the allegations of fraud and attorney misconduct." (Dkt. No. 111, at 3.) Pietz affirmatively stated that he had "hoped to further probe Prenda representatives on [sic] reasonableness of the Wagar and Denton investigations and of the 'snapshot' infringement theory." (*Id.*) And he concluded by noting that there is a "potential precedential importance of an order on that issue." (*Id.*) Pietz sought to use the district court's order to show cause to provide the proverbial haymaker to future infringement actions. That is not disinterested.

### B. The District Court Contravened Binding Supreme Court and Ninth Circuit Precedent by Drawing Negative Inferences From the Appellant's Invocation of His Fifth Amendment Privilege Against Compelled Testimony.

The Supreme Court has made clear that an inference of guilt may not be drawn from a defendant's failure to testify about facts relevant to his case in the criminal setting. *Griffin v. California*, 380 U.S. 609 (1965). "Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily

assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426 (1956). Rather, "[t]he privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education*, 350 U.S. 551, 557, 558 (1956); *accord Griffin*, 380 U.S. at 613.

At the April 2, 2013, hearing, the district court stated, "I want to know if some of my conjecture is accurate. The only way I can find out is to have the principles [sic] here and answer those questions. Now, if you say he will not answer those questions, then I will draw whatever inferences I think are reasonable from the facts as I know them." Transcript, Apr. 2, 2013 Hearing on Order to Show Cause, at 8:24–9:4 (attached hereto as Exhibit B). The Sanctions Order makes clear that the district court made its findings of fact contained therein based on "adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify." (Dkt. No. 130, at 3.)

The district court attempted to justify its adverse inferences by characterizing the proceedings below as a civil proceeding. (Dkt. No. 130, at 3 n.3, citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).) While the case below was filed as a civil copyright infringement action between Ingenuity13, LLC and John Doe, the district court turned it into an order to show cause proceeding against the Appellant—not a party to the original action—who was threatened with incarceration and criminal penalties. (*See* Dkt. No. 86 (amending Dkt. No. 48).) The Supreme Court and this

Circuit have both held that a punitive sanction issued pursuant to a court's inherent power constitutes a criminal sanction. *F.J. Hanshaw Enters.*, 244 F.3d at 1139. The imposition of a criminal sanction axiomatically cannot be made on the basis of adverse inferences from the invocation of the Fifth Amendment's right against compelled testimony. To be sure, the unusual proceedings below—which ensnared attorneys, paralegals, technicians, copyright holders and companies from across the world—squarely fit the Court's concern of "protecting the innocent who might otherwise be ensnared by ambiguous circumstances." *Slochower*, 350 U.S. at 557.

## II.     Irreparable Harm Is Certain in the Absence of a Stay

"[O]ne's professional reputation is a lawyer's most important and valuable asset." *Walker v. City of Mesquite, Texas*, 129 F.3d 831, 832 (5th Cir. 1997) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 412 (1990) (Stevens, J., concurring in part)). This Court has recognized that formal findings of attorney misconduct are "likely to stigmatize [an attorney] among her colleagues and potentially could have a serious detrimental effect on her career," and thus constitute appealable sanctions. *U.S. v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000). "Public criticism of a lawyer in an opinion in which the court does not undertake the job of fact-finding with all the procedural safeguards involved in a disciplinary proceeding may destroy or severely damage a lawyer's reputation." Andrew L. Kaufman, *Judicial Ethics: The Less-Often Asked Questions*, 64 Wash. L. Rev. 851, 864 (1989). Such reputational injury may constitute irreparable harm: "[W]e have recognized that intangible injuries, such as damage to

ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Regents of Univ. of Cal. v. Am. Broadcasting Cos.*, 747 F.2d 511, 519–20 (9th Cir. 1984)); *see also Schwartz v. Covington*, 341 F.2d 537, 538 (9th Cir. 1965) (recognizing "stigma" as irreparable injury).

Here, the district court explicitly made formal findings that Appellant and others "suffer from a form of moral turpitude unbecoming of an officer of the court." (Dkt. No. 130, at 10.) The district court found that Appellant and others had "shattered law practices," "conspired," "offer only disinformation … to the Court," "stole the identity" of an individual named Alan Cooper, "fraudulently signed" a document, "demonstrated their willingness to deceive," and "outright lie[d]." (*Id.* at 3–5.) These findings inflict irreparable reputational injury in themselves—but in addition the district court effected widespread publication of its findings. The Sanctions Order was incongruently peppered with pop-culture references to *Star Trek*, which had the effect of attracting significant mass-media coverage of the order. (*See, e.g., id.* at 1–2 ("resistance is futile" … "Plaintiffs engaged their cloak" … "the Court went to battlestations").) This, in turn, gave immediate and ongoing effect to the reputational damage inflicted by the serious findings.

Perhaps most significantly, the Sanctions Order provided that the district court will "notify all judges before whom these attorneys have pending cases," and recruited an opposing attorney to provide contact information for "every judge" by May 20,

2013. (*Id.* at 11.) Appellant has a diverse practice, and such actions threaten to prejudice the outcome of numerous unrelated cases throughout the nation on subject matters far afield from copyright—take, for instance, a consumer protection case being handled by Appellant Hansmeier. The notification imposed by the Sanctions Order thus threatens to injure not only Appellant, but his clients as well. Absent a stay of execution, the district court's Sanctions Order will ensure irreparable damage to Appellant's reputation in the legal community, in turn damaging his ability to attract clients and represent them effectively.

## III.   A Stay of Execution Pending Appeal Will Not Injure the Other Parties

The third factor requires the Court to address whether the other parties would be substantially injured by the issuance of a stay. *Golden Gate Rest. Ass'n*, 512 F.3d at 1115. The only consequence of a stay of execution here is that defense attorneys Morgan Pietz and Nicholas Ranallo will not be paid the punitive attorneys' fee award imposed by the district court until the appeal has been resolved. (*See* Dkt. No. 130, at 10–11.) This is not a cognizable injury, let alone a *substantial* injury. In contrast, as explained above, Appellant faces substantial irreparable reputational injury absent a stay of execution pending appeal.

## IV.   The Public Interest Weighs in Favor of a Stay

The final factor requires the Court to examine whether a stay is in the public interest. *Golden Gate Rest Ass'n*, 512 F.3d at 1115. Appellant's constitutional rights to due process protections are at stake in this case, and "it is always in the public interest

to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979) ("[T]here is a strong societal interest in other constitutional guarantees extended to the accused as well.")). In addition, there is a significant potential impact on nonparties: "Sanctions may not only have a severe effect on the individual attorney sanctioned but also may deter future parties from pursuing colorable claims." *Primus Automotive Fin. Servs. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997). Thus, the public interest weighs in favor of this Court issuing a stay of execution pending appeal.

## CONCLUSION

For the foregoing reasons, this Court should stay execution of the district court's Sanctions Order pending appeal.


DATED: May 16, 2013

Respectfully submitted,

/s/ Paul R. Hansmeier
Paul Hansmeier (MN Bar #387795)
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*In Propria Persona*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2013, I authorized the electronic filing of the foregoing with the Clerk of Court of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will send notification of such filing to all participants in the case who are registered CM/ECF users.

I further certify that some of the participants in the case are not registered CM/ECF users, and that I caused the foregoing to be mailed via the United States Postal Service to the following non-CM/ECF participants:

**Ingenuity13, LLC**
*Represented by*
Brett L. Gibbs, Esq.
Of Counsel to Prenda Law Inc.
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

DATED: May 16, 2013

/s/ Paul R. Hansmeier
Paul Hansmeier (MN Bar #387795)
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*In Propria Persona*